IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TIMOTHY W. FORD, | ) | CASE NO. 8:05CV528 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| DOUGLAS COUNTY DEPARTMENT OF CORRECTIONS, et al, | ) ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

The plaintiff is an inmate at the Douglas County Department of Corrections ("DCC"). He has filed a complaint under 42 U.S.C. § 1983 against defendants Monika Bell, Unknown Jackson, Unknown Moss, Unknown Sullivan, Unknown and Unnamed Officers, Unknown DCC Warden, Unknown Wheeler, the DCC, Unknown Stephens and Unknown Connelley. The defendants are sued in their individual and official capacities. Filing No. 46, p. 1. The plaintiff's original complaint has been amended and supplemented, and his pending complaint is a consolidation of Filing Nos. 1, 13, and 46.

The underlying facts of the plaintiff's complaint have remained substantially unchanged from the outset. Briefly stated, the plaintiff alleges:

> I was handcuffed & shackled and slammed into a window and then a door by two officers. I was then hog tied and slammed to the floor by the same two officers. I was also hit in the throat by one of the officers while I was in handcuffs & shackles knocking me to the floor hitting my head on the floor.

Filing No. 1, p. 11. The plaintiff alleges that as a result of the defendant officers' conduct, his chin and head were bruised, and he has memory loss, brain damage, and a fear of officers. Filing No. 1, p. 11. The plaintiff's complaint alleges he was forcibly moved to another cell in violation of his substantive and procedural due process rights, (Filing No. 46, pp. 4-5), and the officers used excessive force in violation of his Eighth Amendment rights. Filing No. 46, p. 6. He requests an award of damages.

The defendants filed a motion for summary judgment. Filing No. 59. In support of their motion, they argue: 1) the plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act; 2) any claim against the defendants in their official capacity is a claim against Douglas County, and the plaintiff has failed to show that a "municipal policy"' or "custom" caused a violation of his constitutional rights; 3) the plaintiff's evidence fails to raise a claim of excessive force; and 4) the plaintiff's injuries, if any, were *de minimus* and cannot support an excessive force claim.

The defendants' motion for summary judgment was filed while the plaintiff's motion to compel, Filing No. 56, was pending. The plaintiff initially responded to the summary judgment motion by stating he was unable to fully respond absent receiving the documents he requested in discovery. See Filing No. 65. Thereafter, the defendants served discovery responses. See Filing No. 67. Accordingly, as to the plaintiff's motion to compel, the court entered an order giving the plaintiff until July 30, 2007 to notify the court if the defendants' discovery responses were inadequate or incomplete and, if so, to specifically identify which discovery requests remain pending and the basis for plaintiff's claim that the defendants had failed to fully respond. The plaintiff was also given until August 7, 2007 to file an additional response to the defendants' motion for summary judgment. Filing No. 69.

The plaintiff filed a response to the court's Filing No. 69 order on July 31, 2007. Filing No. 70. The plaintiff acknowledged receiving documents from the defendant in response to his discovery requests, and although he stated most of the material was not readable, he did not identify any specific documents which were unreadable, nor did he request additional or clearer copies. With respect to defendants' motion for summary judgment, the plaintiff stated he wanted to "stand on the previous response." Filing No. 70, p. 2.

Therefore, the plaintiff's motion to compel has apparently been resolved, and the court will deny the motion to compel in accordance with the terms of its Filing No. 69 order. The defendants have now filed their reply on the summary judgment. That motion is deemed submitted. For the reasons set forth below, the defendants' motion for summary judgment will be granted.

<u>Standard of Review</u>

A motion for summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 327 (1986). In response to the moving party's evidence, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 249 (1986).

> Once the moving party has met its burden of showing "the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law[,] . . . the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."

<u>Krein v. DBA Corp.</u>, 327 F.3d 723, 726 (8th Cir. 2003) (quoting <u>Stone Motor Co. v. Gen. Motors, Corp</u>., 293 F.3d 456, 465 (8th Cir. 2002)(internal citations omitted)).

Statement of Facts

The defendants filed substantial evidence in "reply" to the plaintiff's response on this motion for summary judgment. As to the issues discussed in this memorandum and order, the plaintiff's responses, Filing Nos. 65 and 70, contain conclusory statements but no material statements of fact. Therefore, this motion for summary judgment can and will be resolved based on the allegations of plaintiff's consolidated complaint and the evidence initially submitted by the defendants in support of their summary judgment motion. Based on these sources, the following facts are before the court on defendants' motion:

On October 25, 2005, the plaintiff smeared mustard on his room window. When he was ordered to clean the window, he poured the contents of the bottle of cleaner onto the floor and laid on his mattress. In response, the plaintiff was handcuffed and shackled by defendants Stephens and Connelley. Filing No. 1, p. 8.

When these officers left the plaintiff's cell, the plaintiff stood up and began "using the restroom on the floor." Filing No. 1, p. 8. The plaintiff alleges defendants Stephens and Connelley re-entered the plaintiff's cell and escorted him to another room in handcuffs, and then slammed him into a door. In response, the plaintiff began to verbally abuse defendant Stephens. Filing No. 1, p. 9.

The plaintiff alleges defendant Stephens responded to this verbal abuse by hitting the plaintiff in the throat with such force that it knocked him to the ground, causing the plaintiff to hit his head on the floor. Defendant Stephens then exited the cell and closed the door. Filing No. 1, p. 9.

The plaintiff responded by sitting on the cell floor and repeatedly kicking the door. Filing No. 1, p. 9. The plaintiff alleges that defendants Stephen and Connelley, along with several other officers, came to the plaintiff's cell, flipped the plaintiff onto his stomach, hog tied him, and used an additional chain to connect his shackles and handcuffs. The plaintiff alleges that in the presence of other prison officers, defendant Stephens proceeded to slam the plaintiff to the floor, causing the plaintiff to lose consciousness, then hit the plaintiff's head on his bunk, and finally slammed the plaintiff onto his bunk. Filing No. 1, p. 9.

The plaintiff filed a grievance concerning these alleged events on October 28, 2005. Filing No. 1, pp. 4-5. On November 17, 2005, the plaintiff filed an inmate request asking for information on the status of his grievance. Filing No. 13, p. 1.

The plaintiff's complaint filed in this forum was signed on November 27, 2005. In the body of that initial complaint, the plaintiff acknowledged that his grievance "is on going investigation. * This is being looking into as per one conversation." Filing No. 1, p. 3. The complaint was mailed on November 30, 2005, (Filing No. 1, p. 13), and received by the clerk of this court on December 2, 2005.

On November 30, 2005, the plaintiff sent an inmate request to DCC's case management staff requesting a copy of the final decision on his grievance. The case manager responded on December 2, 2005, and advised the plaintiff to send a kite to Captain Hubbard because her records showed it was "still being looked into." Filing No. 13, p. 3. The plaintiff had also sent an inmate request to Captain Hubbard on November 30, 2005. Captain Hubbard responded on December 2, 2005 as follows:

> Tim, after the investigation was completed it came back unsubstantiated. In other words, there wasn't enough there to prove what you said as being solid/or that it happened.

Filing No. 13, p. 2. A DCC letter dated December 8, 2005 advised the plaintiff that "Per Capt. Hubbard and Sgt. Corbett this situation is still being looked into. Capt. Hubbard. The investigation in this matter is now closed. We found the charge of assault by staff was not sustained. Lt. Wheeler." Filing No. 13, p. 5.

When the plaintiff entered DCC custody, he was given a copy of the Douglas County Correctional Center Inmate Rules and Regulations Handbook, which outlines the rules and regulations inmates must follow while incarcerated at that facility. Filing No. 61, ex. 4 (Hubbard affidavit), ¶ 5

Section 11 of the DCC Inmate Rules and Regulations Handbook outlines that institution's grievance process. The plaintiff was aware of this process. Filing No. 1, p. 3; Filing No. 46, ¶ 15. Section 11.2 (A) states that "[w]hen an inmate decides to file a grievance of an institutional nature, it is the inmate's responsibility to secure the required grievance form." Filing No. 61, ex. 1, § 11.2 (A). The inmate must complete the inmate portion of the grievance form and submit it to the Captain's Office within seven days of the incident giving rise to the complaint. The grievance is then investigated and a determination made. If an inmate does not agree with a grievance determination, he can obtain an additional grievance form and appeal the decision to the Chief Deputy of Corrections. The Chief Deputy of Corrections must then review the grievance and issue a response. If the inmate disagrees with the Chief Deputy of Corrections' response, the inmate is not precluded from seeking other remedies. However, the Handbook clearly warns that "internal remedy requests are usually required prior to submitting a complaint to an outside agency or group." Filing No. 61, ex. 1, § 11.2 (D).

The plaintiff filed his complaint without waiting for a final determination on his grievance, and he never (even after this lawsuit was filed) appealed the grievance determination for review by the Chief Deputy of Corrections. Therefore, DCC did not have an opportunity to formally address the plaintiff's claims before his lawsuit was filed, or to consider other potential remedies for resolution of his claim. Filing No. 61, ex. 4 (Hubbard affidavit), ¶¶ 24-25.

4

Legal Analysis

Section 1997e (a) of the PLRA provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e(a)(emphasis added). Pursuant to § 1997e(a), a prisoner must exhaust all administrative remedies available through the prison system before filing a lawsuit challenging prison conditions. This exhaustion requirement is mandatory; the court cannot, in its discretion, waive this requirement. Woodford v. Ngo. 126 S.Ct. 2378, 2382 (2006). The PLRA requires an inmate to exhaust available administrative remedies even if he is complaining of isolated incidents of excessive force and is requesting a remedy (e.g. damages) which cannot be obtained through the prison grievance process. Foulk v. Charrier, 262 F.3d 687, 695 (8th Cir. 2001)(citing Booth v. Churner, 532 U.S. 731 (2001)).

Failure to exhaust is an affirmative defense under the PLRA. Jones v. Bock, 127 S.Ct. 910, 912 (2007). The defendants have the burden of pleading and proving the plaintiff failed to exhaust his administrative remedies. Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001). The defendants in this case have, in both their answer and motion for summary judgment, alleged that the plaintiff's case must be dismissed for failure to exhaust administrative remedies. Filing No. 47, affirmative defense ¶ 4.

Based on the undisputed facts, the plaintiff filed his complaint before receiving a final ruling on his initial grievance or, at the very least, without appealing the adverse determination through the DCC's internal grievance process.[1] Since the plaintiff failed to exhaust the DCC's administrative remedies before filing this lawsuit, his case must be dismissed pursuant to 42 U.S.C. § 1997e(a). Accordingly, the defendants' motion for summary judgment will be granted. See e.g. Booth v. Churner, 532 U.S. 731, 731 (2001)(affirming dismissal of inmate's lawsuit for failure to exhaust administrative remedies where the plaintiff alleged corrections officers' excessive force caused injuries, and although he filed a grievance, he failed to avail himself of the later appeal stages of the

---

[1]Captain Hubbard's affidavit states that the plaintiff's grievance was denied on October 31, 2005. Filing No. 61, ex. 4 (Hubbard affidavit), ¶ 7. The actual grievance form of record is ambiguous on this issue. See Filing No. 13, p. 4. The responses to the plaintiff's inmate requests would tend to support that as of October 31, 2005, the matter was still being investigated and the actual determination was reached on the date the plaintiff's case was filed, or perhaps thereafter. However, any discrepancy in the actual date of the initial grievance determination is immaterial because irrespective of when that determination was made, it is undisputed that the plaintiff failed to appeal the ruling in accordance with the process outlined in the DCC Handbook.

prison's administrative process); <u>Lyon v. Vande Krol,</u> 305 F.3d 806, 809 (8th Cir. 2002)(reversing a judgment in favor of the inmate where he failed to exhaust the prison grievance system before filing his lawsuit).

THEREFORE, IT IS ORDERED:

1. The plaintiff's motion to compel, Filing No. 56, is denied;

2. The defendants' motion for summary judgment, Filing No. 59, is granted;

3. The plaintiff's objection to the defendants' motion for summary judgment is denied as moot; and

4. Judgment will be entered in accordance with this Memorandum and Order.

Dated this 20th day of August, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge